SCANNED 

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CO/OP OPTICAL VISION DESIGNS, assumed name for
COOPERATIVE OPTICAL SERVICS, INC.,
A Michigan corporation,

        Plaintiff,

-vs-

LOCAL 84932, UNITED OPTICAL WORKERS, of Detroit, Michigan, affiliated
with the INTERNATIONAL UNION of ELECTRICAL WORKERS-
COMMINICATION WORKERS OF AMERICA, AFL-CIO,

        Defendants.

## MOTION TO STAY IMPLEMENTATION OF ARBITRATION AWARD

    **NOW COMES** the plaintiff, by and through its attorney, William S. Stern, who requests that this Honorable Court stay application of an arbitration award entered August 20, 2004 for the following reasons:

1.    The plaintiff is an employer who provides vision services as well as engages in the manufacturing of optical lenses and in the retail sale of optical wear.

2.    The defendant is a union representing employees of the plaintiff.

3.    During the year 2003, the plaintiff transferred employees from various locations without obtaining the permission of the defendant.

4.    The plaintiff transferred the employees in order to improve its sales and efficiency. The transfer has been effective.

5.    The plaintiff believed that it had the right to decide what employees worked in particular locations because such transfers were not prohibited by the language of the

Collective Bargaining Agreement that governed the relationship between the plaintiff and defendant.

6.     The Collective Bargaining Agreement by its silence on the issue of unilateral transfers explicitly left such powers to determine transfers to the plaintiff employer as the Collective Bargaining Agreement states that the "usual and customary rights of management not specifically modified or abridged by the terms of this Agreement remain the rights of management".

7.     The union objected to the transfers and filed a grievance. The essence of the union grievance was that the prior contracts and negotiations that led to the present Collective Bargaining Agreement were inherently incorporated into the Collective Bargaining Agreement even though the language prohibiting the unilateral transfer of employees was not prohibited by the explicit language of the Collective Bargaining Agreement.

8.     When the plaintiff found that the union objected to the transfers, the plaintiff employer demanded to know which employees objected to the transfers so that the issues regarding particular hardships could be addressed but the union refused to inform the plaintiff of the identity and specific problems of employees who objected to the transfers until the arbitration hearing.

9.     The initial grievance was denied by the plaintiff and the defendant union filed a demand for arbitration with the American Arbitration Association pursuant to the terms of the Collective Bargaining Agreement.

10.     An arbitration was held on June 30, 2004 and a decision rendered August 20, 2004 whereby the arbitrator found that based upon the prior contracts and negotiations leading up to the Collective Bargaining Agreement dated May 15, 2002, the plaintiff had

no right to engage in the unilateral transfer of employees and ordered that the employees be returned to their prior sites and that the employees be compensated for any costs associated with the transfers.

11.     The decision of the arbitrator specifically stated that the decision should be implemented by end of September 2004.

12.     Implementation of the arbitrator's decision should be stayed because the plaintiff has an excellent chance of voiding the decision. Implementation of the decision would result in transferring the location of many employees who are satisfied with their present positions and will result in unnecessary disruption of the company because returning the employees that were transferred in 2003 will cause other employees who were not part of that process to be transferred to positions that they do not wish to occupy. Also, if the arbitrator's decision is correct, then these other employees will have the right to grieve their new positions thereby creating a great deal of unnecessary unrest and turmoil.

13.     The prejudice to the plaintiff by implementing the decision of the arbitrator far outweighs the minimal disruption in the lives of the employees transferred as only two present employees out of the many employees transferred actually complained at the arbitration hearing and both employees are fully employed and being paid.

14.     The decision of the arbitrator was clearly in error as parol evidence of negotiations and prior agreements leading up to the present, all inclusive Collective Bargaining Agreement is not allowed to be utilized as a basis for a decision in the absence of a finding, supported by evidence, that the Collective Bargaining agreement was ambiguous and therefore had to be interpreted or supplemented by the use of parol evidence.

15.    There was no finding that the Collective Bargaining Agreement was in any respect ambiguous and therefore, it was error to allow parol evidence of negotiations and prior agreements leading to the present agreement, all inclusive Collective Bargaining Agreement.

16.    The parties have a right to rely upon the language contained in the Collective Bargaining Agreement and there is no provision in the agreement preventing the plaintiff from transferring the employees from one location to another. Therefore, the arbitrator's decision actually added language into the unambiguous agreement that did not exist and which was not agreed to.

17.    The Collective Bargaining Agreement specifically states in ARTICLE XXXVIII that the Collective Bargaining Agreement was not to be modified unless a specific procedure was followed. Adding in language presenting the unilateral transfer of employees when such language is not contained in the agreement constitutes a modification of the Collective Bargaining Agreement.

18.    ARTICLE XII, Section 3 of the Collective Bargaining Agreement specifically prohibits the arbitrator from revising any of the terms of the Collective Bargaining Agreement and by adding in language prohibiting the unilateral transfer of employees from one location to another, the arbitrator exceeded his authority by modifying the Collective Bargaining Agreement contrary to the terms of the agreement that the arbitrator was sworn to uphold.

19.    The fact that there is no language prohibiting the transfer of these employees in the Collective Bargaining Agreement means that pursuant to ARTICLE XVI, Section 1

of the Collective Bargaining Agreement that such transfer was a "usual and customary right of management" reserved for the plaintiff.

20.    Pursuant to the terms of the Collective Bargaining Agreement, the plaintiff had the right to know the employees aggrieved by the transfer and the union refused to disclose the identities and complaints of such employees prior to the arbitration to allow the company to address the concerns of any such employees prior to the hearing, in violation of ARTICLE XII, Section II of the Collective Bargaining Agreement.

21.    The fact that the plaintiff cannot rely upon the terms of the Collective Bargaining Agreement and that the arbitrator added into the agreement language that is not present in the agreement violates the terms and spirit of the National Labor Relations Act, 29 USC 158(d) which prohibits any party to such a Collective Bargaining Agreement from modifying its terms unless a specific procedure as contained in the act is followed.

WHEREFORE, the plaintiff requests that this Honorable Court delay implementation of the decision of the arbitrator dated August 20, 2004.

Submitted by,

William S. Stern (P27396)
24750 Lahser Road
Southfield, MI 48034
248-353-9400

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION   04-73369

CO/OP OPTICAL VISION DESIGNS, assumed name for
COOPERATIVE OPTICAL SERVICES, INC.,
A Michigan corporation,

GERALD ROSEN

Plaintiff,

MAGISTRATE JUDGE CAPEL,

-vs-

LOCAL 84932, UNITED OPTICAL WORKERS, of Detroit, Michigan, affiliated
with the INTERNATIONAL UNION of ELECTRICAL WORKERS,
COMMINICATION WORKERS OF AMERICA, AFL-CIO,

Defendants.

FILED

'04 AUG 30 P1

U.S. DIST. COURT CLERK
E. DIST. MICH.
DETROIT-PSG

## BRIEF IN SUPPORT OF MOTION TO STAY IMPLEMENTATION OF ARBITRATION AWARD

### Statement of Facts

The plaintiff is in the business of providing optical services and goods in
Michigan and part of Ohio. Certain employees of the plaintiff are represented by Local
84932 of the United Optical Workers of Detroit, Michigan, which is affiliated with the
International Union of Electronic Workers – Communication Workers of America, AFL
– CIO (hereinafter referred to as the "union"). The relationship between the parties is
governed by a Collective Bargaining Agreement dated May 15, 2002. Due to financial
difficulties experienced in 2003, the plaintiff decided to transfer certain employees to
other retail locations in an effort to improve productivity. The union filed a grievance
claiming that the transfers violated the Collective Bargaining Agreement, specifically
ARTICLE XIV, Section 3, that required the posting of positions when permanent job
openings occur. The union also objected in general to the decision of the company to
transfer employees without union input. An initial grievance hearing was held pursuant to

1

the terms of the Collective Bargaining Agreement. The plaintiff at this hearing requested that the company provide them with the names of individuals who claimed that they were aggrieved by the transfer in order to address specific concerns. The union refused to provide the names of such individuals. The company denied the grievance and a request was filed by the union with the American Arbitration Association, An arbitration hearing was held at the American Arbitration Association on June 30, 2004. The decision rendered on August 20, 2004 by the arbitrator found in favor of the union and ordered that the company return the employees to their previous locations by the end of September 2004 as well as reimburse the affected employees for out of pocket losses experienced by the transfers. The company has filed an action to vacate the arbitration award and this motion to stay implementation of the award.

The company put a great deal of thought into these transfers in order to promote better productivity and sales. The company felt that the transfers were allowed under the terms of the Collective Bargaining Agreement as the only mention of permanent transfers was in ARTICLE XIV, Section 3 which allowed such transfer as long as certain factors were considered. The union also agreed that ARTICLE XIV, Section 3 of the Collective Bargaining Agreement is the portion of the agreement that addressed the situation. The union claimed that the applicable portion of the agreement required the posting of the positions occur before the company was allowed to transfer the employees.  The applicable portion of the Collective Bargaining Agreement reads as follows:


**ARTICLE XIV, Section 3**

When permanent job openings occur, the Employer will post notice of such openings in each of its facilities for at least three (3) days prior to

2.

filling the job. Employees who are interested in being considered for the transfer or promotion must sign their name to the bid sheet within three (3) days of posting. In all cases of permanent transfer or promotion within or of increase of decrease of the working force, the following factors shall be considered:

Length of Service

Skill and ability

When skill and ability are relatively equal, length of service shall govern and preference shall be given in connection with layoffs and recalls to employees having the greater seniority rights as above provided.

The plaintiff made the decision to transfer the employees without posting because the management determined that it would be in the best interests of the company and it was not prohibited by the Collective Bargaining Agreement. There were no permanent job openings that occurred because these were jobs that already existed and the employees were simply being moved. Therefore, the first two sentences of ARTICLE XIV, Section 3 did not apply. However, the third sentence of ARTICLE XIV, Section 3 did apply as it specifically addressed "all cases of permanent transfer". In all cases of permanent transfer two factors were to be determined according to the explicit wording of ARTICLE XIV, Section 3 of the Collective Bargaining Agreement. These two factors were:

a)  Length of service;

b)  Skill and ability.

When the two factors were equal, the person with the greater length of service took precedence. The plaintiff company plugged in these two factors and determined where the employees should be placed.

3

When a grievance was filed over the issue, the plaintiff wanted to know which employees were aggrieved so that it could utilize the two factors in making the decision as to the placement of employees. The union refused to tell the company which employees were aggrieved. Instead, the union challenged the entire procedure of the company making the transfer decision without posting the jobs.

The company explained that there were no permanent job openings as these were old positions that were still filled. Therefore, the first two sentences of ARTICLE XIV, Section 3 did not apply. Since there was no language in the Collective Bargaining Agreement that prohibited making permanent transfers without posting, the company felt that it was within the powers still held by the company under ARTICLE XVI, Section 1 of the Collective Bargaining Agreement that read:

**ARTICLE XVI, Section 1**

The usual and customary rights of management not specifically modified or abridged by the terms of this Agreement remain the rights of management....

The company felt that it was certainly a usual and customary right of management to decide where to place its employees. Furthermore, ARTICLE XXXVIII of the Collective Bargaining Agreement did not allow any changes or modifications to the agreement unless a specific formula was followed. Therefore, the company felt secure in making the decision as to where to place its employees without resorting to the posting procedure or requesting union permission. There simply was no language in the Collective Bargaining Agreement prohibiting the action.

A hearing was held at the company offices on the grievance filed by the union concerning the transfers. When the union refused to inform the company which, if any,

4

specific employees objected to the transfers, the grievance was denied. The company then filed a demand for arbitration with the American Arbitration Association pursuant to the grievance procedure set forth in the Collective Bargaining Agreement.

The arbitration hearing was held on June 30, 2004. The union presented three witnesses, two who are still present employees of the plaintiff who explained that they objected to being transferred. The testimony really did not address the issue of posting. The primary contention of the union was that even though the Collective Bargaining Agreement did not specifically prohibit the unilateral transfer of employees, the history of prior contracts and the negotiations that led up to the present Collective Bargaining Agreement caused a prohibition concerning the unilateral transfer of employees to be incorporated into the Collective Bargaining Agreement. The company strongly objected to the introduction of all parol evidence concerning prior contracts and negotiations as it felt the Collective Bargaining Agreement was not ambiguous and therefore it was wrong to allow the introduction of parol evidence. The company argued that it had a right to rely upon the specific language carefully included in the Collective Bargaining Agreement.

The arbitrator issued his decision and specifically did not make any ruling or decision that the contract was ambiguous. The issue was totally ignored. Instead, the arbitrator utilized the parol testimony and past conduct of the parties in concluding that the transfers were invalid.

# ARGUMENT

The plaintiff is being required by the arbitrator's decision to return all twelve of the transferred employees to their prior positions. This will force the plaintiff to uproot other employees who then will potentially and likely feel aggrieved at their removal and transfer. This will lead to other grievances and a disgruntled workforce that has the potential to be totally disruptive. It is quite possible that some of the transferred employees are satisfied with their new stations. While implementation of this arbitration award has the great potential to totally disrupt the company, a stay of the decision will not harm the employees in any respect as the arbitration award clearly compensates the affected employees for any financial harm experienced. The law is clear that the arbitrator totally was without the power to make this decision and that he overstepped his authority. The plaintiff is requesting that this Court stay the implementation of the arbitrator's decision until this Court has the opportunity to address the issues raised by the plaintiff.

As the Court can see from the language quoted from the Collective Bargaining Agreement, there is no language in the agreement prohibiting the company from deciding to permanently transfer employees from one location to another as long as the company considers length of service as well as skill and ability when making the decision per ARTICLE IV, Section 3 of the Collective Bargaining Agreement. The arbitrator's decision causes a prohibition preventing the company from transfering employees to be inserted into the Collective Bargaining Agreement where such language simply is not present in the Collective Bargaining Agreement. Importantly, the insertion of such

language into the agreement where it was not present violates the specific terms and spirit of the National Labor Relations Act that prohibits a party to a collective bargaining agreement from terminating or modifying the contract unless a specific procedure is utilized. See 29 USC 158(d). In *Local 58, International Brotherhood of Electrical Workers, AFL-CIO* vs *Southeastern Michigan Chapter, National Electrical Contractors Ass'n, Inc.,* 43 F 3d 1026; 147 A.L.R. Fed. 699 (6th Cir. 1995) the Court set aside an arbitration award because it violated the National Labor Relations Act and was contrary to public policy. An arbitrator's award is legitimate only so long as it draws its essence from the collective bargaining agreement. When the award is repugnant to the National Labor Relations Act, the decision should not be enforced by a court. *Carey vs Westinghouse Electric Corp.,* 375 US 261, 272; 84 S. Ct. 401; 11 L Ed 2d 320 (1964). It was wrong for the arbitrator in this case to insert language in the contract that was not present. Such a decision violates the specific wording of 29 USC 158(d) that prohibits modification of the contract unless the protocols of the statute are specifically followed. The plaintiff company should not be forced to acquiesce to language to which it did not agree. Parties to a collective bargaining agreement very carefully draft the agreement and chose their words very carefully. The parties specifically agreed in ARTICLE XVI, Section 1 that the usual and customary rights of management not specifically modified or abridged by the terms of the agreement remain the rights of management. The decision of the arbitrator in this case inserted language into the agreement prohibiting the transfer of employees, which certainly is traditionally a usual and customary right of management. The arbitrator's decision made ARTICLE XVI, Section 1 of the Collective Bargaining Agreement meaningless for the plaintiff company. Modification of the agreement in such

a manner certainly violates the specific terms and the spirit of 29 USC 158(d) which has given collective bargaining agreements a more stable position than that of ordinary common-law contracts. See *Gatliff Coal Co.* vs *Cox,* 152 F 2d 52 (6th Cir 1945).

The Federal Arbitration Act sets forth specific grounds to vacate an arbitration award. 9 USC §10(a)(1) allows vacation of such an award "where the award was procured by" "undue means". 9 USC §10(a)(3) allows vacation of an award where the arbitrator was guilty of misbehavior by which the rights of any party have been prejudiced. 9 USC §10(a)(4) allows vacation of an arbitration award where the arbitrator exceeded his powers. When this arbitrator decided to utilize the parol evidence of negotiations and prior contracts leading up to the present Collective Bargaining Agreement to justify inserting language into the agreement preventing the company from transferring employees, he created a new contract that was not agreed to by the parties. Such a decision clearly constitutes grounds for vacating the arbitration award under 9 USC §10(a)(1), (3) and (4).

Case law is clear that it is improper to create a new contract by utilizing parol evidence. In the case of *Local Union No. 600, United Automobile, Aircraft & Agricultural Implement Workers of America, UAW-CIO, et all.* vs *Ford Motor Co.,* 113 F Supp 834 (1953), the court in this Eastern District of Michigan, Southern Division case was urged by the union to hold that a prohibition upon the company from decentralizing its operations was an implied part of the collective bargaining agreement. The court refused to insert language preventing decentralization into the agreement as to do so would require the court to ignore and withdraw from the contract the express provision which unequivocally vested in the company the sole right to manage its business. The

court noted that the contract was intended to be all inclusive and was entered into by parties having full knowledge of what they were doing, and of the purposes in reducing the agreement to writing. The court in *Local Union No. 600, United Automobile, Aircraft & Agricultural Implement Workers of America, UAW-CIO, et all.* vs *Ford Motor Co., supra,* noted that a reading of the terms and conditions of the agreement left the court with the unshakable impression that the framers fully intended to state clearly every point of importance in the minds of the contracting parties. Yet the union attempted to convince the court that there was a major area of understanding on a specific point, easily includible in the written contract, that was not included. No claim of oversight or inadvertence was made. Just as in the case at bar, the union argued that there was a part of the agreement that simply was not included in the writing. The United States District Court, Eastern District of Michigan, Southern Division, refused to allow the contract to be so reformed and to have language inserted that was not agreed to by the parties, as it stated:

> To say that there is a term of this contract properly a part of it, but not included in the signed agreement, and to order that there be reformation so that it be included in the signed agreement, and to order that there be reformation so that it be included, is to do violence to the settled law of contracts and equity.

> The plaintiffs contend that at the time of the negotiations leading up to the instant agreement there was an implied condition to, and an integral part of, the agreement that there would be no decentralization of the Rouge Plant operations, yet nowhere in the comprehensive agreement is such a condition set forth. The written agreement clearly purports to cover all conditions within the contemplation of the parties at the time of its

execution. Can the plaintiffs be heard to say that there is a vital basis for the agreement that is not contained therein? If this all-important consideration so claimed by plaintiffs was in fact present, why was it not contained in the written embodiment of the understanding between the parties? The plaintiffs do not claim that their bargaining representatives were so naïve and inexperienced as to have suffered the defendant to talk them out of including such a condition in the contract on the grounds that it was unnecessary to have it in there. The plaintiffs offer no explanation for the omission of said condition from the written contract. It is difficult to conceive of parties to a contract, who were as diligent in its preparation as these parties, purposely omitting a vital condition. The only possible conclusion that can be drawn is that such condition did not in fact exist.

Similarly, it was totally improper for this arbitrator to insert language into the Collective Bargaining Agreement that simply did not exist.

There is an abundance of case law standing for the proposition that it is improper for courts to insert language into collective bargaining agreements that does not exist. For example, in the case of *Fraser* vs *Magic Chef-Food Giant Markets, Inc.,* 324 F 2d 853 (6th Cir 1963), the union brought suit claiming that implied in the collective bargaining agreement was a provision prohibiting the company from ceasing operations at a particular plant. The 6th Circuit Court of Appeals refused to insert such language into the collective bargaining agreement where it did not exist. The court noted that the management rights clause of the agreement would be meaningless if parol evidence was allowed to be utilized to insert language into the agreement that did not exist.

It should be emphasized that the arbitrator in this case relied almost totally upon parol evidence introduced by the union to determine the intention of the parties without first finding that there was any ambiguity in the Collective Bargaining Agreement. The

case of *Grimes* vs *Dayton-Walther Corp.,* 680 F Supp 1110 (USDC, S.D. Ohio, Western Div 1987) did resort to parol evidence in interpreting a collective bargaining agreement. However, the court first reviewed the agreement and made a finding that there was an ambiguity that had to be illuminated by the introduction of parol evidence. In the case at bar, the arbitrator simply noted the positions of the parties and adopted the position of the union, without taking the first step to determine whether it was proper to rely upon the parol evidence of negotiations by making a finding that there was some ambiguity in the contract that had to be explained by resort to parol evidence. Perhaps this is because the arbitrator in this case, while experienced, apparently did not have formal training as an attorney.

There is a small minority of cases that do allow the introduction of parol evidence to interpret collective bargaining agreements. See *Penzien* vs *Dielectric Products engineering Company, Inc.,* 374 Mich 444; 132 NW2d 130 (1965). However, the vast majority of case law makes it clear that the use of parol evidence is only proper in interpreting a collective bargaining agreement where there first is a finding that the contract is ambiguous. See *Lewis* vs *Hixson, D.C.,* 174 F Supp 241, 248 (1959); *United Electrical, Radio and Machine Workers of America* vs *General Electric Company, D.C.,* 208 F Supp 870, 872 (1962). It is simply too much to ask of a party to review the language of an agreement and to incorporate all of the give and take leading up to the agreement and guess at what provisions one of the parties meant to incorporate into the agreement that was purposefully left out. It is improper that something that was purposefully omitted by the parties will now be inserted by an arbitrator. The clause that

leaves omitted issues to management would be rendered meaningless by such a procedure.

The vast majority of courts recognize that parties cannot determine their rights and obligations under a collective bargaining agreement if they must resort to parol evidence to add to or alter the terms of the agreement. How does a party determine what parol evidence to consider? As stated by the court in *Abbington* vs *Dayton Malleable, Inc.,* 561 F Supp 1290 (USDC, S.D. Ohio, Eastern Div 1983) in footnote 17 when the company's ability to close a plant was challenged:

> Plaintiffs would have this Court consider alleged oral representations made during the tent meeting as part of the contract between the parties. In essence, plaintiffs urge that the entire agreement between the parties is not embodied in the memorandum of agreement, but rather consists of prior statements made to the employees. This is a classic case of an attempt to use parol evidence to alter the terms of a written contract. As such, this Court can discern no reason for allowing these oral statements to be included as part of the terms of the parties' agreement. See *Magic Chef,* (324 F 2d at 857; *Santilli* vs *General Motors Corp.,* 100 LRRM 2326, 2328 F Supp 506 (W.D. Pa. 1974).

The Collective Bargaining Agreement that is the subject of this litigation specifically prohibits either party from modifying the agreement unless the procedures set for in ARTICLE XXXVIII of the Collective Bargaining Agreement are utilized. The union has not attempted to so modify the agreement. Yet, the arbitrator has added language to the agreement that prohibits the employer from transferring employees to

other locations when such a prohibition is absent from the agreement. This in itself violates ARTICLE XXXVIII of the agreement.

The arbitrator's award should be vacated as he clearly overstepped his authority when he modified the contract by reliance upon parol evidence that was not included in the agreement. Implementation of this erroneous decision will create havoc within the company. Keeping the status quo until the Court has the opportunity to rule upon the issues presented will not cause hardship to the employees involved as they are still receiving their pay. The decision is clearly violative of common sense and case law. If a stay is entered preventing implementation of the arbitrator's award, no prejudice will occur to the employees involved as the arbitrator's decision requires that the involved employees be made whole for any financial losses experienced as a result of the transfers. Yet, if the employees must be returned to their prior positions, other employees will be transferred and such employees may feel aggrieved. These uprooted employees will likely file grievances and the plaintiff will be faced with addressing the concerns of many employees who presently are not directly involved. Therefore, implementation of the arbitrator's decision will be extremely harmful to the labor peace of the plaintiff while staying the arbitrator's decision will not harm the involved employees. The plaintiff is therefore requesting that this Court enter an order delaying implementation of the arbitrator's decision until such time as this Court has the opportunity to rule upon the issues presented.

## CONCLUSION

The company in this case has been placed in the impossible situation of taking action to aid the financial situation of the company while being forced to predict what language that is not present in the Collective Bargaining Agreement should be incorprated. It reviewed the Collective Bargaining Agreement and saw no specific prohibition against transferring employees. The agreement did explicitly require that the company take into account two factors when deciding which of two employees to transfer in a given situation. The company complied with the specific terms of the Collective Bargaining Agreement. The company was met with a grievance whereby the company objected to the transfer in general. It refused to state which employees objected to the transfers until the last stage of the arbitration process. Therefore, the company was prevented by the union itself from comparing the seniority and skill and ability of competing employees as required by the Collective Bargaining Agreement.

The union takes the position that even though there is no explicit prohibition against the company deciding to transfer employees, the union contends and the arbitrator agreed that the company was supposed to incorporate into the collective bargaining agreement negotiations leading up to the agreement. Such parol evidence is only proper to be utilized in the event that the contract is ambiguous on a point. There has been no finding that the contract is ambiguous and therefore, the use of such parol evidence is improper. Furthermore, the Collective Bargaining Agreement specifically states in ARTICLE XVI, Section 1 that the usual and customary rights of management not specifically modified or abridged by the terms of this Agreement remain the rights of

management. This clause is rendered meaningless if the company must incorporate language into the agreement preventing transfers that simply is not present.

The company has no way to determine its rights and obligations under the terms of the Collective Bargaining Agreement if it must guess at what the parties meant to incorporate into the contract. Insertion by the arbitrator of language prohibiting the employer from transferring employees to other locations creates a whole new contract that was not agreed to by the parties. Such activism violates the National Labor Relations Act that promotes labor peace by giving great credence to Collective Bargaining Agreements and which prohibits modification of such agreements unless a specific formula is followed.

Implementation of the award will cause employees not directly involved to be uprooted from their positions. These other employees will potentially demand to be placed in various locations and will file grievances. The plaintiff will be faced with a great deal of labor unrest. Yet, staying implementation of the arbitrator's award will cause little if any damage to any employee as the employees will still receive their pay. If the arbitrator's decision is upheld, the employees will receive compensation for out of pocket expenses experienced by the transfers. Therefore, while the company can experience substantial harm the employees will not be harmed in the least if the decision of the arbitrator is stayed until such time as the Court has the opportunity to rule upon the issues presented.

Submitted by,


William S. Stern (P27396)
24750 Lahser Road
Southfield, MI 48034
248-353-9400

**American Arbitration Association**
*Dispute Resolution Services Worldwide*

*Michigan Labor Center*

August 19, 2004

American Center Building, Suite 1150, 27777 Franklin Road, Southfield, MI 48034-8208
telephone: 248-352-5500 facsimile: 248-352-3147
internet: http://www.adr.org/

William Stern
Law Offices of William S.Stern
24750 Lahser
southfield, MI  48034

Donald Greenspon
Donald B. Greenspon, P.C.
North Park Plaza, Suite 825
17117 West Nine Mile Road
Southfield, MI  48075

Re: 54 300 01799 03
    IUE-CWA
    and
    Co-Op opitical Vision Designs

Grievances:    #6-2003

Dear Parties:

By direction of the Arbitrator, we herewith transmit to you the duly executed Award and Opinion in this matter.

We also enclose the Arbitrator's bill for services rendered in the above-captioned matter. When paying the Arbitrator, checks should be prepared and mailed directly to the Arbitrator, not to the American Arbitration Association. Your cooperation in this matter is greatly appreciated.

The American Arbitration Association, in its publications *Summary of Labor Arbitration Awards*, *Arbitration in the Schools* and *Labor Arbitration in Government*, reports arbitration decisions in labor arbitration cases. These monthly publications have a wide distribution and are used by practitioners in the field as well as for educational and research purposes. We would like to consider the enclosed case of yours for reporting in a forthcoming issue.

Unless we hear from you to the contrary within one (1) month from the date of this letter of transmittal, we will assume your have no objection to our doing so. Objections to the use of this decision should be sent directly to the Publications Department, AAA, 335 Madison Avenue, 10th Floor, New York, NY 10017.

Thank you for choosing the services of the American Arbitration Association.

Very truly yours,

Monica F. Martin-Tyler
Case Manager
248 352 5500
tylerm@adr.org

cc:    David S. Tanzman



# David Tanzman Associates

25539 Briar Drive · Oak Park, Mi 48237 · Tel 81 · · · · · · · · · · · · · · · · ·
New York Office · 71-55 Janth Street · Flushing, N. 11366 · · · · · · · · · · · · · · · ·
Social Security No 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 Tax ID·

August 2, 2004

William S. Stern Atty.
Co/Op Optical Designs
24750 Lasher Road
Southfield, Mi 48034

Donald Greenspon Atty.
Donald B. Greenspon, P.C.
IUE CWA Local 84932
17117 W. Nine Mile Rd.
Southfield, Mi 48075

Case No. AAA54-300-01799-03      Re: Class Action 6-2003

---

For professional services during the period January 27th through August 22, 2004

Activities:

Hearing: June 30, 2004    Per Diem-.1 day                    $600.00

Research, Study, Draft Award

August 3 through 15, 2004

Per Diem-2days @$600.00      1200.00

Total Activities                                            $1800.00

Reimbursable Expenditures:

Transportation                          $12.00
Meals                                    10.00
Typing                                  200.00
Miscellaneous Copies, Phone, Mail       22.00

Total Reimbursables                                          244.00

Grand Total                                                 2044.00

Employer Share              $1022.00

Union Share                 $1022.00

Thank You

_David S. Tanzman_

Davis S. Tanzman
Arbitrator

In the Matter of Arbitration

between

The Coop Optical Vision Designs
c/o Attorney William S. Stern
Southfield, Michigan 48034


and


The IUE - CWA Local #84932
c/o Attorney Donald B. Greenspon
Southfield, Michigan 48034

August 5, 2004

Arbitrator

Award

and

Statement


**Grievance:**  Class Action #6-2003
Collective Bargaining Agreement - Article XIV Section 3

American Arbitration Association Case Number  54-300-0179903


## Attendance

| **Employer** | **Union** |
|---|---|
| William S. Stern, Attorney | Donald B. Greenspon, Attorney |
| Jackee Smith, CEO | Thomas Marunich, Bus. Agt. |
| Benjamin Edwards, Personnel Retail Op. | Donald Phillips, President |
| | Deborah Hoover, R/D Co/op |
| | Nakeisha Smith, R/D |


**Hearing:**  June 30, 2004
**Location:**  Offices at American Arbitration Association
Southfield, Michigan

*David S. Tanzman*
David S. Tanzman
Arbitrator

1

2:04-cv-73369-GER-WC   Doc # 2   Filed 08/30/04   Pg 25 of 40   Pg ID 32

Having exhausted the grievance procedure of the current Collective Bargaining Agreement, the Co-op Optical Vision Designs, Detroit, Michigan & Environs (hereinafter referred to as the "Employer") and the IUE - CWA Local 84932 (hereinafter referred to as the "Union") selected Arbitrator David Tanzman through the agency of the American Arbitration Association to hold hearing(s) on the class action grievance #6-2003 regarding Collective Bargaining Agreement Article XIV, Section 3 and Article XVI, Section 1, and render a final and binding award on the matter in accordance with the authority granted the Arbitrator by the Collective Bargaining Agreement.

Such hearing took place June 30, 2004 at the offices of the American Arbitration Association.   Each party was given full opportunity to present statements; provide witness testimony with supporting exhibits and at the close of the hearing, agreed to submit post hearing briefs to the Arbitrator through American Arbitration Association Case Manager within the 30 day allowable period.   Having received the briefs and exchanged with the parties, the American Arbitration Association closed the record August 2, 2004.

## ISSUE

The issue presented the Arbitrator follows:

Did the Employer violate the Collective Bargaining Agreement when it unilaterally permanently transferred twelve (12) bargaining unit employees?  If so, what should the remedy be?

## EMPLOYER POSITION

The Employer, under powers it retained in its Management Rights clause Article XVI, Section 1 of the Collective Bargaining Agreement, transferred unilaterally certain staff members to different company locations in the interest of more efficiency.

The Union grieved protesting the transfers; but refused to tell the Employer which employees objected to the transfers. One employee - the Union President, objected to the transfer and filed her own grievance regarding the transfers. No other employee formally complained. At this point - June 16, 2004, no complaint by Union or any grieving employee should be allowed to come forward to have the issue addressed.

The usual and customary rights referred to in the Management Rights clause allows for unilateral job transfers. The Union contends the unilateral transfers of employees violated Article XIV, Section 3 of the Collective Bargaining Agreement. It states employees interested in being considered for the transfer (or promotion) must sign their name to the bid sheet within 3 days of posting. In all such cases the factors to be considered are length of service if skill and ability are relatively equal.

The Employer contends it specifically considered the various skills and abilities of the employees and matched these attributes to the locations. Had any employee complained about the changed location assignment, the Employer could consider skill, ability and seniority as required by the referenced Article. No one specifically complaining, there was no issue.

While Article XII, Section 1 allows the Union to initiate a grievance, Section 2 allows Employer or Union to require that the aggrieved employee, his/her steward or foreman be present at any step of the grievance procedure, to allow for the specific

problem to be addressed.  With no one coming forth, the Employer was unable to determine compliance with Article XIV, Section 3 of this Agreement.

The Collective Bargaining Agreement does not prohibit the Employer from unilaterally transferring employees.  It only requires in cases of permanent transfers length of service, skill and ability be considered.  The Employer action is not prohibited and therefore is one of the usual and customary power retained by Management Rights Article XVI, Section 1 of the Collective Bargaining Agreement.

The Union wishes to add language prohibiting unilateral transfers of employees unless the positions subject of the transfer are posted and employees can have direct input into positions they desire such language is not in the Collective Bargaining Agreement.

During the grievance hearing, the Union indicated even though the language prohibiting transfers without posting was absent from the agreement it was the parties intention to incorporate such language into the agreement.  It is improper for the parties to insert into an unambiguous contract language not contained in the agreement.

The Employer did not violate the Collective Bargaining Agreement since it allows unilateral transfers of employees as a management right.  Posting is not required for permanent transfers to take place.  The Employer did consider the skill, ability and seniority when it decided to transfer the employees.  Any aggrieved employee could have come forth with any changes that the three elements were not properly considered.  No one came forth and thus left no issue to be addressed.

The Arbitrator should therefore, deny the grievance and sustain the Employers position.

4

## UNION POSITION

The Union postured its grievance in two parts:

1.    Did the Employer violate the Collective Bargaining Agreement when it unilaterally permanently transferred bargaining unit employees under the following circumstances:

       a.    language in prior Collective Bargaining Agreement granting the Employer such authority was specifically negotiated out of the Collective Bargaining Agreement;

       b.    when subsequent Employer negotiated efforts failed to get that authority back into the Collective Bargaining Agreement that followed;

       c.    when the Employer practice with no such right was clearly in effect for 12 years through three (3) periods of renewed negotiated contracts; and

       d.    when, despite the clear contractual language, the Employer engaged in the unilateral conduct of permanently transferring 12 bargaining unit employees.  October 31, 2003 without prior notice to the Union; no opportunity for Union to bargain on the matter with the Employer and without Union approval or consent.

The Union further declared the Management Rights clause Article XIV, Section 1 of the Collective Bargaining Agreement does not provide the Employer with authority to engage in the above referenced action.

5

The Collective Bargaining Agreement covering 5/15/88 - 5/14/91 contained the following clause which gave the Employer the right to transfer employees under certain circumstances:

> "Transfer of employees from one office to another shall be made on the basis of seniority within classifications excepting that the Employer reserves the right to transfer employees for legitimate business reasons only in out of line of seniority when the situation may demand it or by agreement between the Employer and the Union"

Union business Agent Thomas Marunich, involved the past twenty years, testified to the difficulties this clause caused until the parties negotiated this language out of the Agreement dated 5/15/91 - 5/14/94.  In return language, which allowed the Employer the right to temporarily transfer employees - defined as, "non-permanent movement" and to replace employees on an emergency basis.

This new language (Article XIV, Section 3) inserted into the 91-94 Agreement prevented the Employer from transferring bargaining unit employees for "legitimate business reasons", but allowed transfers on a temporary and emergency basis only. This clause and conditions continued for the next three Agreements from 5/15/94 - 5/14/98; 5/15/98 - 5/14/2002 and the current contract which is the focal point of this dispute.

The hearing testimony conclusively demonstrated Employers recognition that;

1.    Since 1991-1994 contract, the Employer no longer had the unilateral right to permanently transfer bargaining unit employees.

2.    The Employer never attempted to effect a permanent transfer of a bargaining unit employee without the Union's consent.

6

3.       Despite the Employer attempting to regain this contractual right on two occasions - once July 28, 1998 via an expanded Management Rights clause which was eventually dropped; and during the current contract negotiations, the Employer made a proposal 6/25/02 to provide the Employer with added authority regarding transfers , which it withdrew during the negotiations 9/5/02, leaving the language in the current contract as it was in the previous Agreement.

Despite the Employers right to permanently transfer had been bargained out and repeatedly kept out of the Collective Bargaining Agreement; and never before attempted to take such prohibited action since the 1991 Agreement, the Employer took such action October 31, 2003 against twelve (12) bargaining unit employees.  The Employer gave no notice of such action to the Union nor did it give the Union the opportunity to negotiate on the matter towards a possibly satisfactory solution.  In fact, each one of the transferred employees learned of the Employers occurring unilateral action when she was handed her form transfer letter on 10/31/03 as one of the twelve employees involved.

The Union filed a group grievance pursuant to Article XII, Section 7 of the Collective Bargaining Agreement.  It also filed an unfair labor practice with the National Labor Relations Board protesting the Employers refusal to bargain over its unilateral transfers.  The latter Government Agency deferred on this matter pending the Arbitrators decision in the matter.

The Employer violated the Collective Bargaining Agreement when it unilaterally permanently transferred twelve (12) bargaining unit employees from one location to another.  The Union clearly proved through the history of

7

negotiations and actual practice that the Employer restricted its unilateral transfers to those of a temporary and emergency basis or with prior Union consent. While it attempted to extend its authority at the appropriate negotiating sessions, it nevertheless recognized the restrictions remained the same, as the Employer withdrew its proposals and honored the contractual language - until 10/31/03 when it arbitrarily implemented in practice what it could not achieve in negotiations.

Contrary to Employer expression, its exercise has led to and will continue to lead to harsh, unreasonable and unjust results. Three Union witnesses testified to the hardships the October 2003 transfers had on their lives. One of the three actually severed her employment with this Employer. Whether or not any of the 12 transferees were dissatisfied is immaterial, aside from being a clear contractual violation, if the Employers claimed right were to be affirmed, there would be nothing to prevent the Employer from contractually transferring the bargaining unit employees at any time it wants to and from any location for any and all reasons. That is why the Union confined the contractual language to Employer unilateral temporary and emergency transfers so that such harsh and unjust results should not occur.

Further, the Managements Rights clause in the Collective Bargaining Agreement does not give authority to unilaterally permanently transfer bargaining unit employees for the following reasons:

1.    The Employer completely ignored the parties bargaining history and its concomitant past practice.

8

2.    The Management Rights clause has been the same in every contract since 1991.  Once the right to transfer for "legitimate business reasons" was deleted from the 88-91 Agreement, the Employer never attempted to exercise this "lost" right.

3.    The Employer attempted to have such lost right restored during subsequent negotiations, but withdrew its proposal and the parties reverted to the same "lost right" language.

4.    The action of the Employer is also deemed to be "arbitrary, capricious or made in bad faith and is "implied" limited by a general provision of the contract such as a recognition clause.

The Employer explanation for its unilateral action - it was an economic decision to "sell more glasses" - was included in its form letter to the transferees 10/31/03. However, it was not the explanation given each of the three witnesses for transferring them.

One witness told by the Employer Director of Sales her transfer was from Detroit to Livonia to enhance the company's "diversity".  A second transferee witness was told by the same official that "she might like a break".  The third transferee - a 31 year company employee, as well as Local Union President was denied any explanation.

The current CEO, Jackee Smith, testified she was not involved in the transfer decision, and had no first hand knowledge why the decision was ever made.  Her predecessor Ralph Subastian, key official in this Employer action, was not present at the hearing.

9

Finally, evidence to justify the claim Benjamin Edwards of increased sales caused by the transfers did not come forth at the hearing.

Finally, the Employers disregard of the recognition clause in which the Employer's arrogant behavior in this case was in direct contradiction of its legal obligation to recognize the Union as the "sole exclusive bargaining agent" for its employees.

No prior notice or discussion with Union occurred. The Local Union President, Donna Phillips, was given her personal notice of transfer, not as Union official, with no explanation other than the form transfer letter each transferee received.

Recognizing the history and record of the contractual language negotiated from the "right" to the "lost right" or unilateral permanent transfers, the Union on several occasions negotiated permanent transfers of bargaining unit employees with the Employer and the procedural option was available this time as well. The Employer chose otherwise. It would only entertain transferee concerns on an individual basis, and assumed none existed since no transferee came forth with any problems.

Thus the Employer decision and action violated both its statutory duty to bargain under federal law, and its contractual recognition of the Union.

For all the foregoing reasons, the Union respectfully requests the Arbitrator rescind all twelve unilateral transfers that occurred December 2003 and make all affected bargaining unit employees whole for losses they incurred as a result of this contractual violation.

## ARBITRATOR ANALYSIS AND DETERMINATION

The Arbitrator carefully scrutinized the record of the assignment and reviewed the conflicting positions of the parties with utmost care. The following are the elements identified by him which provided the basis for his determination and award:

1.   The initial fact to identify is the Arbitrators authority to address the grievance and render an award to be final and binding on all parties to the dispute.

2.   Since the Union has also filed legal National Labor Relations Board charges against the Employer and said Agency is awaiting the Arbitrators Award, this person does not intend to comment on the legal aspect of the dispute, it being in the hands of legal jurisdiction competence.

3.   The Management Rights clause in each of the Collective Bargaining Agreements negotiated between the parties makes a boiler plate statement that reads inter-alis as follows:

> **"Article XVI - Management, Section 1**
>
> The usual and customary rights of Management not specifically
>
> modified or abridged by the terms of this Agreement remain the
>
> rights of management".

It is thus declaring that all usual and customary rights of management modified or abridged by any and all parts of the Collective Bargaining Agreement in fact modify those customary rights. Included in the Collective Bargaining Agreement are the terms, conditions which limit the Managements right to direct the work force on a unilateral basis to wit:

11

a.    Limits or latitudes stemming from legal actions i.e. Wage & Hour or FMLA laws.

b.    Clauses negotiated by the Employer negotiated with a Union who is legally recognized as the representative of a group of employees to be covered by a Collective Bargaining Agreement.

c.    Grievance settlements and/or Arbitrator Awards unless specifically noted to be without prejudice or precedent.

4.    While the Management Rights clause maintains the generalized expressions of the rights of management, results of collective bargaining whether as renewal of contracts or supplementary agreements during the Collective Bargaining Agreement period pertaining to wages, hours and conditions of employment may modify the managerial (rights to its further latitude or limits).

5.    In this case, the Arbitrator carefully read the Managements Rights clause Article XVI, Section 1 in each Agreement and determined that in fact the language in each contract from 1988 to the present is exactly the same, and is therefore only modified by the terms and conditions of employment in the remainder of the Agreement.

6.    Transferring employees from one office to another was a bone of contention between the parties.  Thus, the Collective Bargaining Agreement seniority provision in the Collective Bargaining Agreement dated 1988-91 contained the following seniority provision-specifically Article XIV - Seniority, Section 3.   The Arbitrator, because of its significance, includes the entire verbatim of the Section paragraph 2:

12

**"Article XIV, Section 3 - Para 2:**

Transfer of employees from one office to another shall be made on the basis of seniority within classifications, excepting that the Employer reserves the right to transfer employees for legitimate business reasons only and out of line of seniority when the situation may demand it or by agreement between the Employer and the Union.:

Whatever disturbed the Union under those terms, it was enough for the Union to raise the issue during the negotiations for the 1991-94 contract and succeeded in getting the aforementioned terms modified to the following language:

**Seniority XIV Section 3 - Para 2:**

Temporary transfers of employees from one office to another shall be made on the basis of seniority within classification, with the transfer offered first to the highest senior employee at the nearest office with available employees and the requirement to transfer from the least senior employee on up in sequence.

Temporary transfer is defined as the non permanent movement of an employee from his/her normally scheduled office to another office to fill a vacancy to which management has 72 hours notice.

For Emergency Replacements (vacancies to which management has less than 72 hours notice) management will fill vacancy as the situation dictates."

13

7.    It is clearly evident that this change in contract language definitely caused a new modus operandi in so far as temporary or non permanent or emergency situations and permanent transfers were to prevail.

The parties negotiated three (3) more Collective Bargaining Agreements. The Employer attempted to cause a change in the language that would probably have restored its right to make mere unilateral transfer of a permanent nature, however each of those collective bargaining events ended with the parties retaining the contractual language that had been inserted into their Collective Bargaining Agreement in the 1991-94 contract.

The Employer could engage in temporary and/or emergency appointments on a unilateral basis, or as the relationship provided, the Employer had access to the Union to negotiate permanent transfers which identified a legitimate past practice.  However, conspicuous by its absence from the 1991-94 transfer language was the expression for "legitimate business reasons". It could have been the basis for discussion and negotiation with the Union, but as of 1991 until the present, the yardsticks for unilateral transfers were temporary and/or emergency as described in the appropriate Seniority Article XIV, Section 3 contract clause or by negotiation with the Union on the basis of past practice.

8.    The Employer, contrary to the language of the Collective Bargaining Agreement, issued letters of non temporary transfer to twelve (12) bargaining unit employees and directed them to report to the transferred location and get one's assignment from a designated individual at the transferred location.

14

1.   The bargaining unit employees were each individually informed of the transfer with a set of repeated reasons for the transfer.

2.   Many changes occurred within the Employer that may/may not affect the employee personally.  Whether it did or not was evidently of secondary impact on bargaining unit employees in such circumstances.  Based on the recognition clause of the Collective Bargaining Agreement, the Union certainly was entitled to know of the impending action before it occurred.  Neither the transferee(s) were told in advance nor was the Union alerted to the action.  The function of representation is made a mockery under such managerial moves contrary to the basis of Union representation, and disregard to 12 years of consistent pattern of relationship.

9.   The group of twelve (12) transferred employees, while treated by the Employer as individuals, actually were grouped together by the common bond of the Employers unilateral action of a similar nature to each.  Not only were the 12 subjected to the volatile act of permanent transfers effective November 7, 2003, but nothing in the behavior of the Employer to suggest that such employee mobility may not be a pattern for the future involving any of the 12, or any of the remaining bargaining unit employees.  This is why rational reasoning would suggest since the entire bargaining unit workforce could be subject to this same unilateral transfer at any time management decides business environment changes suggest themselves in the form of transfer reassignment similar managerial acts may, can, or will occur.  A class action grievance initiated by the

Union on behalf of all its bargaining unit members is manifestly valid.

**10.**     The Arbitrator searched the Employer statement and testimony at the hearing but is at a loss to find the basis for the Employer action and rationale any where in the terms of the Collective Bargaining Agreement and in the past practice between the parties.

## CONCLUSION AND AWARD

The Arbitrator therefore has reached the conclusion that the Employer has violated · the Collective Bargaining Agreement.   Seniority Article XIV, Section 3 pertaining to permanent and temporary and emergency transfers.  The Employer is directed to execute the following award:

1.   All twelve (12) transferred employees be returned to their previous assignments and locations.

2.   The Employer shall reimburse each of the transferred employees for any monies each actually suffered any cost which resulted from the transfer based on specific evidence of loss.

3.   Each transferee be reassigned to his/her classification held prior to the transfer and no loss of seniority and/or benefits.

4.   The Employer may opt to negotiate any desired transfers with the Union in accordance with past practice.

5.   The Employer otherwise shall cease such unilateral transfers during the life of the current Collective Bargaining Agreement.

6.   The execution of this award shall take place within the period from this award until no later than the end of September 2004.

Respectfully submitted,

David S. Tanzman

David S. Tanzman
Arbitrator

Date of Award:       August 20, 2004